Flagg *v.* Mann⸗et al.

---

AUSTIN FLAGG *v.* SAMUEL B. MANN AND ABEL LYMAN.

### *Accord and satisfaction.*

A., the maker of a note for sixty-five dollars, agreed with B., the holder, to to pay it as follows: A. was to let B. have the use, for his two mares, of a stallion belonging to A. and another person, which was accordingly done, and A. was also to pay B. fifteen dollars. If neither of the mares should have colts, A. was to pay B. the further sum of fifteen dollars, and if only one of them, then seven dollars and a half. The advertised price of the services of the stallion was ten dollars for each mare, warranting a colt. B., not having the note with him at the time, the fifteen dollars, to be paid by A. to B., were placed in a third person's hands to be delivered to B. as soon as he should surrender the note. B. never surrendered the note, nor applied for, nor took the fifteen dollars, but brought an action against A., upon the note. Both of the mares had colts. *Held*, that this agreement constituted an accord and satisfaction of the claim upon the note, and was a bar to the action thereon.

ASSUMPSIT on a note dated March 5, 1852, for sixty-five dollars, payable to the plaintiff in four months from date, with interest annually, and signed by the defendants. Plea, *non assumpsit*, and trial by the court, at the January Term, 1857,—UNDERWOOD, J., presiding.

Flagg *v.* Mann et al.

It appeared on trial, that before the maturity of the note in question, the defendants became insolvent, and that the plaintiff offered to sell the note for thirty-five dollars. In May, 1855, the defendant Lyman, and one Priest, were the owners of a stallion, and Lyman and the plaintiff then made the following agreement, by the consent of Priest, viz: that Lyman should both let the plaintiff have the use of this stallion for his two mares, and also pay him fifteen dollars for the note in question, and, if neither of the mares should have colts, Lyman should pay the plaintiff fifteen dollars more, and if only one of the mares should have colts, seven dollars and a half more. Upon this the mares were put to the horse. Lyman borrowed fifteen dollars of Priest to pay to the plaintiff, and by the agreement of the parties, this sum was put into Priest's hands, to hold until the plaintiff should bring the note (which he did not have with him at that time) and surrender it to Priest for Lyman, when he was to receive the fifteen dollars from Priest. The plaintiff never brought the note to Priest, nor called for the fifteen dollars, and Priest kept the same money in his possession ready for the plaintiff up to the time of trial. Both the mares had colts, and the plaintiff never paid for the services of the stallion in any other way than by the agreement above stated.

Lyman did not carry out any price upon his memorandum book, used for that purpose, for the services of the stallion, in respect to the plaintiff's mares, though a minute was made thereon of the fact of such services having been rendered. Neither did he ever call on the plaintiff for any pay for the use of the horse.

It further appeared that Lyman and Priest's advertised price for the use of their horse that season, was ten dollars per mare, warranting a colt.

Upon the foregoing facts, the court rendered judgment for the defendants, to which the plaintiff excepted

*E. Weston* and *L. B. Peck,* for the plaintiff, cited, *Wright* v. *Allen,* 4 Vt. 572; *Wheeler* v. *Wheeler,* 11 Vt. 60; *Goodwin & Co.* v. *Follett,* 25 Vt. 386.

*J. P. Kidder,* for the defendants, cited, 1 Smith's Leading cases, 384, and cases there cited; *Pynnel's case,* 5 Coke 17; Coke Litt.

212; *Wheeler* v. *Wheeler*, 11 Vt. 60; Cro. Eliz. 46; *Strange* v. *Holmes*, 7 Cow, 225; *Walkinson v. Inglesby*, 5 Johns. 386; *Eaton* v. *Lincoln*, 13 Mass. 424; *McDaniels* v. *Lapham*, 21 Vt. 222; *Bryant* v. *Gale*, 5 Vt. 416.

The opinion of the court was delivered by

ALDIS, J.   The note in suit was for sixty-five dollars.   The makers of the note had failed.   Afterwards, the plaintiff, and the defendant Lyman, made an agreement in relation to the note, and did certain acts in execution of the agreement, which the defendants claim were in accord and satisfaction of the note.

I.  To constitute a good accord and satisfaction, there must be an agreement that the thing to be received by, or done for the plaintiff, shall be in discharge and satisfaction of the debt.   In this case, it appears that the parties contemplated a *present* surrender and discharge of the note.   Had the note been there present, it would have been given up then.   As it was not present, the money was then put into the hands of a third party, for him to hold for the plaintiff; and the plaintiff was to surrender the note to such third person, for the defendants.

II.  There must be a sufficient consideration for this agreement. The payment of the fifteen dollars in money, was not such a consideration.   Standing alone, it was only part payment.   But there was another consideration.   The plaintiff was to have the service of the stallion, belonging to Priest and Lyman, for his two mares. This was something of legal value to which he had no right before. Although the service of the horse at a fixed price was advertised, yet, the plaintiff was not thereby entitled to claim such service of the horse, upon tendering to the owners the fixed price.   There might be good reasons for their refusing his use for the plaintiff's mares.   They had the right to refuse without any reason.

III.  The agreement must be fully executed.

The case, after stating that the plaintiff and the defendants made the agreement, proceeds to say, " upon this, the mares were put to the horse."   This part of the contract was then executed.   The payment of the fifteen dollars was then also made by the defendant to a third person (Priest), who was agreed upon in the contract, as the person to whom the money should be paid, and who has since

ever held the money for the plaintiff, and in readiness to be paid to him on the surrender of the note. The defendant Lyman, could not recall the money from the hands of Priest. It was substantially money belonging to the plaintiff. Nothing more could be done by Lyman to fulfil and complete his part of the contract; nor was it in his power to rescind the contract and put himself in his former situation. Under such circumstances, it would obviously be unjust to allow the plaintiff to omit to give up the note and take his money, which he could do, or leave undone, as he pleased (and, which, whether performed or omitted, only affected his own interests), and take advantage of such omission on his own part, to work an injury to the defendant. That which constituted the new consideration of the agreement, the specific thing the plaintiff had bargained for, he had already received.

IV. It is urged that the condition annexed to the agreement, that if both mares should prove not to be with foal, the defendant was to pay the plaintiff fifteen dollars, if but one of them, then seven dollars and a half, made the agreement an executory one, so that there could not have been a satisfaction.

But the main object of the agreement was for a service to be rendered *in praesenti*, and for money then paid; it was not for something thereafter to be done. The condition was only to secure a compensation to the plaintiff, if he failed to receive the expected advantage from the service then rendered. The right to such compensation did not depend upon anything which the defendant might, or might not do, but upon a contingency neither party could control. Nor did either party intend that the note should be kept on foot as a security for such contingent compensation.

Looking at the whole agreement, we conclude that it was not merely the new promise of the defendant in lieu of the old one, or part payment of what was then due, and a new promise of the same nature and by the party then bound; but that it was a new agreement upon a new consideration of a specific service actually accepted by the plaintiff, and of money paid in present discharge and satisfaction of the note. It was not intended that the provision against loss from a future contingency, should change the transaction into an executory agreement.

The case comes fairly within the principle of *Babcock* v. *Haw-*

*kins,* 23 Vt. 561. When the new promise is founded on a new consideration, and is binding on the original promisor, it is generally held to be a satisfaction of the old debt. Much more, when the main agreement is actually *executed,* and the portion of the agreement which looks to the future is only collateral and contingent.

V. But upon another and well established principle, this contingent agreement can not defeat the accord and satisfaction. If the new promise was, in its inception, executory, and not of itself an accord and satisfaction, still, if afterwards it was actually executed, and the plaintiff received the full benefit of its complete performance, it thereby became an accord and satisfaction. This principle is well settled, and needs no citation of authorities to sustain it. The case finds that the contingency from which the plaintiff might have received loss, did not occur ; that the plaintiff has had the full benefit of the agreement; both of his mares having had colts, and thus that the only part of the agreement which was conditional and executory, has ceased to exist.

The judgment of the county court is affirmed.